```
FILED
JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: _____Aug 30, 2023_____
```

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **VALERIE JACKSON,** *on behalf of Shundell Steward,* <br><br> **Plaintiff,** <br> vs. <br><br> **UNIVERSITY OF LOUISVILLE PHYSICIANS, INC.** <br> **Defendant.** | Civil Case No.: __3:23-cv-451-DJH__ <br><br> Hon. _____ <br><br> **PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF:** <br><br> 1) FMLA – INTERFERENCE; <br> 2) FMLA – RETALIATION; <br> 3) ADA – RETALIATION <br> 4) REHABILITATOIN ACT - RETALIATION <br> 5) KENTUCKY CIVIL RIGHTS ACT; <br> 6) COBRA – FAILURE TO NOTIFY <br> 7) ERISA – INTERFERENCE; AND <br> 8) DEMAND FOR JURY TRIAL |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I.
### NATURE OF THE CASE

1. This is an action brought by Plaintiff, Valerie Jackson, *on behalf of Shundell Steward* ("Ms. Steward"), by counsel, against Defendant, University of Louisville Physicians, Inc., d/b/a UofL Physicians, ("Defendant"), for violating the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601 et seq., the American with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq., the Rehabilitation Act, as amended, 29 U.S.C. § 794, et. seq., the Consolidated Omnibus Budget Reconciliation Act, as amended, 29 U.S.C. § 1161 et seq., the Employee Retirement Income Security Act, as amended, 29 USC § 1001, et seq., and the Kentucky Civil Rights Act, K.R.S. 344.010 et. seq.

1

## II.
## PARTIES

2. Plaintiff is the mother of Ms. Steward. Due to Ms. Steward's diminished mental capacity, Plaintiff was appointed as Attorney-in-Fact to Ms. Steward. Plaintiff possesses full power and authority to initiate civil actions on behalf of Ms. Steward.

3. Both Plaintiff and Ms. Steward are residents of Jefferson County, Kentucky, who at all relevant times to this action resided within the geographical boundaries of the Western District of Kentucky

4. Defendant conducts business within the geographical boundaries of the Western District of Kentucky.

## III.
## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331; 28 U.S.C. §1343; 28 U.S.C. § 1367; 29 U.S.C. § 794(a); 29 U.S.C. § 1132; 29 U.S.C. § 2617(a)(2); and 42 U.S.C. §12117.

6. Plaintiff's state law claim arises from the same common nucleus of operative facts as her federal law claims and all her claims form a single case and controversy under Article III of the United States Constitution.

7. Defendant is an "employer" as defined by 29 U.S.C. § 1002(5); 29 U.S.C. § 2611(4); 42 U.S.C. § 12111(5)(A); and K.R.S. 344.030(2).

8. Defendant at all relevant times was a "program or activity receiving Federal financial assistance" as defined by 29 U.S.C. § 794(b).

9. Defendant at all relevant times maintained health insurance and disability benefits as part of an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1), 1161 et. seq.

10. Ms. Steward at all relevant times was a "covered employee," "participant," and "qualified beneficiary" of health insurance and disability benefits as defined by 29 U.S.C. § 1002(8), 1161 et. seq.

11. Ms. Steward at all relevant times was an "employee" as defined by 29 U.S.C. § 1002(6); 42 U.S.C. § 12111(4); and KRS 344.030(5).

12. Ms. Steward at all relevant times was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

13. Ms. Steward has a "disability" as defined by 42 U.S.C. § 12111(8), K.R.S. § 344.010, and K.R.S. 344.040(1).

14. Ms. Steward exhausted her administrative remedies by filing a Charge of Discrimination and Retaliation against Defendant with the Equal Employment Opportunity Commission (EEOC). Excluding the tolling period due to Ms. Steward's diminished capacity, Plaintiff now files this complaint on her behalf within ninety (90) days of receipt of her Notice of Right to Sue.[1]

15. Venue is proper in this Court under 29 U.S.C. §1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in the judicial district and, or, because Defendant is subject to this Court's personal jurisdiction in this action.

## IV.
## FACTUAL ALLEGATIONS

### Ms. Steward's Employment and Benefits Package through Defendant

16. Ms. Steward was hired by Defendant in December of 2019, as a patient validation and eligibility coordinator.

17. At all relevant times, Ms. Steward met or exceeded Defendant's legitimate job performance expectations.

18. As part of her employment with Defendant, Ms. Steward enjoyed a comprehensive healthcare plan and benefits package.

19. Her health coverage was the Anthem Core Plan, which was the most premium health plan offered by Defendant to its employees.

20. Ms. Steward opted for this plan over other more affordable options to ensure she and her son would receive the highest quality of care in case of serious injury or illness.

21. Ms. Steward also chose to enroll in Defendant's short-term and long-term disability plans.

22. Her short-term disability benefits would cover a significant portion of her income in the event injury or illness prevented her from working. Her long-term disability benefits would provide similar coverage until she reached full retirement age.

23. In addition to these benefits, Ms. Steward maintained accidental death and dismemberment (AD&D) insurance, critical illness insurance, and accident insurance through her employer.

24. These securities would offer Ms. Steward a lump sum payment if she were to suffer a critical illness or sustain an accident-related injury.

25. Taken together, these benefits played a significant role in Ms. Steward's choice to join Defendant's workforce.

26. As a single-parent mother and the sole financial provider for her nine-year-old son, Ms. Steward wished to ensure that her child would receive a certain level of support in case she were to unexpectedly lose the mental or physical capacity to care for him.

### Ms. Steward's Sudden Illness Following Her COVID-19 Vaccine

27. By July of 2021, Defendant had a policy that required all employees within its healthcare facilities to be fully vaccinated against the COVID-19 virus.

28. In compliance with her employer's mandate, Ms. Steward received a second dose of the Pfizer COVID-19 vaccine in the early half of July of 2021.

29. Ms. Steward began feeling sick immediately after receiving the vaccine.

30. Among other ailments, she experienced headaches, nausea, chills, tingling sensations, muscle weakness, and a fever.

31. Ms. Steward went to the hospital upon experiencing these symptoms.

32. The attending physician indicated she may be experiencing side-effects from the vaccine and advised her to take some time off work while she recovered.

33. Ms. Steward therefore obtained a doctor's note from the hospital, which indicated she could not return to work until July 11, 2021.

34. Ms. Steward provided her immediate supervisor with the doctor's note and requested time off until that date.

35. Defendant acknowledged Ms. Steward's request for time off due to illness.

36. Ms. Steward used a combination of her available sick days and personal days during this initial period away from work.

### Ms. Steward's Initial Request for Medical Leave

37. By July 11, 2021, Ms. Steward's condition had gradually worsened.

38. Her headaches, muscle weakness, and numbing sensations intensified and occurred more frequently.

39. Ms. Steward also developed difficulty breathing.

40. Ms. Steward therefore made another trip to the hospital, where a series of tests were performed.

41. Though no specific diagnosis was made at the time, her healthcare provider advised her to continue to rest and closely monitor her vital signs.

42. Ms. Steward was also proscribed medication to manage her pain.

43. Not being able to return to work by July 11, 2021, Ms. Steward notified her supervisor that she had not recovered and needed additional time off from work.

44. Her supervisor appeared to be agitated by Ms. Steward's request to take additional time off.

45. Her supervisor told Ms. Steward that they were "busy" at the office and that she should try to resume work "as soon as possible".

46. Nonetheless, due to her continued illness, Ms. Steward completed and submitted to her employer a formal FMLA request form.

47. The form was submitted on or about July 18, 2023.

48. Defendant acknowledged receipt of Ms. Steward's request.

49. Around the same time, Ms. Steward initiated a short-term disability claim through her employer and Lincoln Financial Group.

50. Per the terms of her disability plan, Ms. Steward was eligible for short-term disability because she suffered an illness that kept her away from work beyond the seven-day elimination period.

### Ms. Steward's Request to Extend Medical Leave

51. Throughout July of 2021, Ms. Steward's health steadily declined.

52. Her muscle weakness began to impact her lung tissues, making it increasingly difficult for her to breathe.

53. The numbness in her legs became more frequent and lasted for longer periods, which led to her experiencing falls at home.

54. Ms. Steward also developed problems with her speech.

55. Ms. Steward's health deteriorated even further the following month.

56. On August 3, 2023, a day after being discharged from the hospital, Ms. Steward suddenly lost consciousness and collapsed at her home.

57. Her mother called 911, and she was rushed by ambulance to the emergency room at Baptist Health Louisville Hospital ("Baptist Health").

58. Though Ms. Steward regained conscious in the emergency room, she was admitted to the hospital because of increased neurological and respiratory impairments.

59. Upon being admitted, Ms. Steward informed her employer that her condition had gotten worse, and that she was hospitalized at Baptist Health.

60. A few days later, while still hospitalized, Ms. Steward faxed her employer additional documents to extend her FMLA leave and to supplement her short-term disability claim.

61. On August 8, 2021, from her hospital bed, Ms. Steward called her supervisor to confirm whether Defendant had received the documents.

62. Her supervisor did not answer but followed up with Ms. Steward the next day via text message.

63. Ms. Steward then replied, "I have been in the hospital for the last 2 weeks and wanted to know if you received the fax."

64. The next day, on August 10, 2021, her supervisor responded to the text, acknowledging receipt of the documents and indicating that Ms. Steward had a "pending FMLA."

### Ms. Steward Became Critically Ill while on Medical Leave

65. Within the next few days, Ms. Steward's health escalated to a critical state.

66. She developed respiratory failure and a severe lack of oxygen in her body.

67. Her lungs became infected, and her kidneys failed.

68. She lost all reflexes, and had complete paralysis in her arms, legs, and upper body.

69. Ms. Steward was quickly transferred to the hospital's Intensive Care Unit ("ICU"), where life support measures were implemented.

70. She was on a mechanical ventilator connected to a surgically inserted tube in her windpipe.

71. Ms. Steward was diagnosed with Guillain-Barre Syndrome—a rare neurological disorder where the body's immune system mistakenly attacks its own nerves, leading to severe muscle weakness and paralysis.

72. She remained unresponsive in the ICU for the next two weeks.

73. Throughout this time, Ms. Steward's family prepared for the worst outcome.

74. A chaplain was called to Ms. Steward's bedside to comfort the family and explore options if Ms. Steward remained unresponsive to "all that can be done."

### Ms. Steward's Termination While on Medical Leave and in the ICU

75. On August 31, 2023, while Ms. Steward remained unresponsive, fighting for her life in the ICU, Defendant terminated Ms. Steward.

76. Ms. Steward's supervisor sent her a text message to inform her that she was terminated as of August 31, 2023.

77. Ms. Steward was of course unaware of the text message and her termination due to her critical condition at the time.

78. Ms. Steward's mother, however, had access to her daughter's phone while at her bedside, and viewed the message.

79. Ms. Steward's mother was surprised by the text message because she knew that her daughter had informed Defendant that she was hospitalized.

80. She also understood her daughter to be on formal medical leave.

81. Ms. Steward's mother then replied to the text message, "Hi Maryanne this is [Shundell Steward's] mom. She has been in the hospital since August 3rd[.] She has Guillain-Barre [sic]. She is in the ICU. She can't breathe, walk or have use of her hands. You can call me at []. Thank you."

82. Ms. Steward's mother left her phone number but never received a call from her daughter's supervisor or any other representative from Defendant.

83. Defendant did not provide any reason for terminating Ms. Steward during her medical leave.

84. Ms. Steward's last communication with her employer was two weeks earlier to inform them of her hospitalization and to request an extension of her FMLA leave, which was received by her supervisor.

85. At the time of her termination, Ms. Steward had at least six weeks of medical leave remaining under FMLA guidelines and Defendant's own internal policies.

### Defendant's Interference with Ms. Steward's Health Coverage

86. Following her termination, Ms. Steward remained hospitalized at Baptist Health for another month.

87. Her condition did not improve, as she remained paralyzed, unable to respond to commands, and on a ventilator.

88. Because Defendant terminated Ms. Steward on the last calendar date of the month, her employer-sponsored health and disability benefits immediately cut off.

89. A representative from Baptist Health's billing department informed Ms. Steward's mother and sister that Ms. Steward's health coverage had been discontinued.

90. Upon being informed of this, Ms. Steward's sister, who was also her designated healthcare proxy, contacted Defendant to inquire about Ms. Steward's healthcare.

91. Defendant did not provide any information to Ms. Steward's sister, despite her medical power of attorney.

92. Nor did Defendant or a plan administrator send any notice regarding Ms. Steward's right to continue her Anthem Core Plan under COBRA.

93. As a result, Ms. Steward was left with no health insurance at the most critical time of her life.

94. Not knowing of any other option, Ms. Steward's sister subsequently applied for government-funded Medicaid insurance on her behalf.

95. By October of 2021, Ms. Steward was set to be transferred from the ICU to a long-term acute care hospital.

96. However, Ms. Steward's hospital transfer was put on hold while she waited approval of her Medicaid application.

97. As a result, Ms. Steward's rehabilitation and therapy were significantly delayed, further impeding her prospects for recovery.

**Defendant's Interference with Ms. Steward's Disability Claims**

98. Ms. Steward was finally admitted to long-term care on November 19, 2021, nearly two months after her scheduled transfer.

99. She was admitted to Highlands Nursing & Rehab Center ("Highlands").

100. Ms. Steward's reliance on a ventilator and feeding tube persisted. She remained unable to walk, talk, or respond to commands.

101. Due to Ms. Steward's ongoing disability, her family began to construct a plan for the care of her child.

102. Ms. Steward's sister and mother once again reached out to Defendant, this time to inquire about her eligibility for disability-related claims.

103. Defendant did not furnish any information.

104. Instead, Defendant stated that Ms. Steward was no longer an employee and that they couldn't disclose any details from her personnel file.

105. Ms. Steward's aunt followed up with Defendant and received a similar response.

106. More than a year later, with the assistance of an attorney, Ms. Steward's family was finally able to access information about her disability benefits.

107. Only then could Ms. Steward's family ascertain her eligibility for benefits and identify the policyholder.

108. By that time, however, many of the important deadlines for reporting her injury and filing a claim had passed.

109. Moreover, Defendant's termination of Ms. Steward served to create uncertainty as to whether Ms. Steward was covered at the time of her qualifying disability.

# V.
# CAUSES OF ACTION

### Count One: Violation of the Family and Medical Leave Act – Interference

110. Defendant's conduct constitutes unlawful intentional interference under the Family and Medical Leave Act, 29 U.S.C. 2601, et seq.

111. Ms. Steward was entitled to leave from her employment with Defendant under the Family and Medical Leave Act.

112. Ms. Steward provided Defendant notice of her intention to take leave under the Family and Medical Leave Act.

113. Defendant denied Ms. Steward benefits to which she was entitled to under the Family and Medical Leave Act.

114. Defendant's actions were intentional, willful, and in reckless disregard of Ms. Steward's rights under the Family and Medical Leave Act and appliable law.

115. Ms. Steward has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### Count Two: Violation of the Family and Medical Leave Act – Retaliation

116. Defendant's conduct constitutes unlawful intentional retaliation under the Family and Medical Leave Act, 29 U.S.C. 2601, et seq.

117. Ms. Steward engaged in a statutorily protected right of requesting leave to which she was entitled under the Family and Medical Leave Act, 29 U.S.C. § 2601 et. seq.

118. Defendant was aware of Ms. Steward's exercise of her right to request leave.

119. Defendant intentionally and willfully took an adverse action against Ms. Steward by terminating her.

120.   Defendant terminated Ms. Steward, in part, because of her exercise of her protected right to request leave.

121.   Defendant's actions were intentional, willful, and in reckless disregard of Ms. Steward's rights under the Family and Medical Leave Act and appliable law.

122.   Ms. Steward has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### Count Three:  Violation of the Americans with Disabilities Act – Retaliation

123.   Defendant's conduct constitutes unlawful intentional retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12201, et. seq.

124.   Ms. Steward engaged in a statutorily protected right of requesting accommodation for her disability, serious illness, and hospitalization under the Americans with Disabilities Act and applicable law.

125.   Ms. Steward opposed disability discrimination under the Americans with Disabilities Act and applicable law.

126.   Defendant was aware of Ms. Steward's exercise of her protected right.

127.   Defendant intentionally and willfully took an adverse action against Ms. Steward by terminating her.

128.   Defendant terminated Ms. Steward, in part, because of her exercise of the protected right.

129.   Defendant's actions were intentional, willful, and in reckless disregard of Ms. Steward's rights under the Americans with Disabilities Act and appliable law.

130.   Ms. Steward has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### Count Four: Violation of the Rehabilitation Act – Retaliation

131. Defendant's conduct constitutes unlawful intentional retaliation under Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. § 794, et. seq.

132. Ms. Steward engaged in a statutorily protected right of requesting accommodation for her disability, serious illness, and hospitalization under the Rehabilitation Act and applicable law.

133. Ms. Steward opposed disability discrimination under the Rehabilitation Act.

134. Defendant was aware of Ms. Steward's exercise of her protected right.

135. Defendant intentionally and willfully took an adverse action against Ms. Steward by terminating her.

136. Defendant terminated Ms. Steward, in part, because of her exercise of the protected right.

137. Defendant's actions were intentional, willful, and in reckless disregard of Ms. Steward's rights under the Rehabilitation Act and appliable law.

138. Ms. Steward has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

### Count Five: Violation of the Kentucky Civil Rights Act – Retaliation

139. Defendant's conduct constitutes unlawful intentional retaliation under the Kentucky Civil Rights Act, K.R.S. 344.010, et. seq.

140. Ms. Steward engaged in a statutorily protected right of requesting accommodation for her disability, serious illness, and hospitalization under the Kentucky Civil Rights Act and applicable law.

141. Ms. Steward opposed disability discrimination under the Kentucky Civil Rights Act and applicable law.

142. Defendant was aware of Ms. Steward's exercise of her protected right.

143. Defendant intentionally and willfully took an adverse action against Ms. Steward by terminating her.

144. Defendant terminated Ms. Steward, in part, because of her exercise of the protected right.

145. Defendant's actions were intentional, willful, and in reckless disregard of Ms. Steward's rights under the Kentucky Civil Rights Act and appliable law.

146. Ms. Steward has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

**Count Six: Violation of the Consolidated Omnibus Budget Reconciliation Act (COBRA)**

147. Defendant's conduct constitutes a violation under COBRA, 29 U.S.C. § 1161 et. seq.

148. Defendant was required under COBRA to notify Ms. Steward of her right to continue health insurance coverage for up to 18 months after a qualifying event.

149. Ms. Steward's termination triggered a qualifying event under COBRA, 29 U.S.C. § 1163(2).

150. Defendant subsequently failed to notify Ms. Steward or her attorney-in-fact of her right to continued health insurance as required under COBRA, 29 U.S.C. § 1166(a)(4).

151. Defendant's actions were intentional, willful, and in reckless disregard of Ms. Steward's rights under the COBRA and applicable law.

152. Ms. Steward has suffered and continues to suffer harm as a result of Defendant's unlawful omissions.

### Count Seven: Violation of the Employee Retirement Income Security Act (ERISA) – Interference

153. Defendant's conduct constitutes unlawful intentional interference under ERISA, 29 U.S.C. § 1140.

154. Defendant terminated Ms. Steward for the purpose of interfering with her attainment of health insurance and disability benefits governed by ERISA, 29 U.S.C. §1002(1).

155. Ms. Steward would have been entitled to such benefits.

156. Defendant's actions were intentional, willful, and in reckless disregard of Ms. Steward's rights under the ERISA and applicable law.

157. Ms. Steward has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## VI.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Valerie Jackson, *on behalf of Shundell Steward*, by counsel, respectfully requests that this Court find for Plaintiff and order Defendant to:

1. All wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

2. Compensation for any and all other damages suffered because of Defendant's unlawful actions;

3. Compensatory damages, consequential damages, and damages for emotional distress for Defendant's violations of the American with Disabilities Act and the Rehabilitation Act;

4. Liquidated Damages under the Family and Medical Leave Act;

5. Statutory penalties under COBRA and ERISA;

6. Punitive damages for Defendant's violations of the ADA and all applicable law; and,

7. All attorney's fees and costs related to this action

## VII.
## DEMAND FOR JURY TRIAL

The Plaintiff, Valerie Jackson, *on behalf of Shundell Steward*, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

*s/ Russom T. Gebreab*
Russom T. Gebreab
Law Office of Russom T. Gebreab
113 West G Street, Suite 826
San Diego, CA 92101
Tel: (619) 483-7220
Email: Russom@rtglawoffice.com

Attorney for Plaintiff, Valerie Jackson,
*on behalf of Shundell Steward*
(Pro Hac Vice Pending)
CA Bar. No. 302255